UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAURIE A. HOY,

                                      Plaintiff,

                   v.

ANDREW SAUL,
Commissioner of Social Security,

                                      Defendant.
_____

<u>DECISION AND ORDER</u>

18-CV-1353L

      Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

      On June 30, 2015, plaintiff, then fifty-two years old, filed an application for a period of disability and disability insurance benefits, alleging an inability to work as of the application date, June 30, 2015. (Administrative Transcript, Dkt. #6 at 13). Her application was initially denied. Plaintiff requested a hearing, which was held on October 26, 2017 before Administrative Law Judge ("ALJ") Stephen Cordovani. The ALJ issued a partially favorable decision on March 15, 2018, concluding that plaintiff was not disabled under the Social Security Act from the alleged onset date of June 30, 2015 through January 30, 2018, but became disabled as of January 31, 2018, when the ALJ found her age category changed pursuant to the plaintiff's "borderline age" status. (Dkt. #5 at 23-26). That decision became the final decision of the Commissioner when the

Appeals Council denied review on November 7, 2018. (Dkt. #6 at 1-3). Plaintiff now appeals from that decision.

The plaintiff has moved for remand of the matter for further administrative proceedings (Dkt. #11), and the Commissioner has cross moved (Dkt. #15) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records, particularly her treatment history for rheumatoid arthritis, right carpal tunnel syndrome status post surgical release, degenerative changes of both hands, left hip osteoarthritis with trochanteric pain syndrome, osteophytes and labrum tear, bilateral Achilles tendinitis and plantar fasciitis, bilateral mid-foot arthritis, and bilateral cavus feet due to mid-foot arthritis, which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #6 at 15).

The ALJ found that plaintiff had the residual functional capacity ("RFC") to perform light work, with the ability to lift and carry up to 15 pounds; can continuously stand up to two hours at a time; can occasionally climb ramps and stairs, stoop and bend; can never kneel, crouch, crawl or

climb ladders, ropes or scaffolds; can never work on uneven ground and must avoid working at unprotected heights; and can frequently handle and finger with the right, dominant hand. (Dkt. #6 at 17-18). Based on this finding and the testimony of vocational expert Kevin Z. Yi, the ALJ concluded that plaintiff's RFC permitted her to perform the representative light positions of mailroom clerk, merchandise marker and packager/inspector, up until January 31, 2018. (Dkt. #6 at 25). The ALJ further determined that as of January 31, 2018, plaintiff's age category changed and she was entitled to consideration as a person of "advanced age." As such, plaintiff *was* disabled after that date by operation of the Medical-Vocational Guidelines. (Dkt. #6 at 26).

## I.   Treating Physician Opinions

It is well-settled that "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). In determining what weight to give a treating physician's opinion, the ALJ must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist. 20 C.F.R. §404.1527(d)[1].

Dr. Eugene Gosy treated plaintiff for pain management for her left ankle (rated as a 5-8 out of 10 in severity) on March 14, 2016 and April 25, 2016. (Dkt. #6 at 475-77, 478-80). In his initial treatment note, Dr. Gosy stated that plaintiff's Achilles heel was tender, with posterior swelling and zero-degree dorsiflexion of the left ankle. He opined that plaintiff was temporarily

---

[1]  Changes to the Administration's regulations regarding the consideration of opinion evidence eliminate application of the "treating physician rule" for claims filed on or after March 27, 2017. For the purposes of this appeal, however, the prior version of the regulation applies.

3

50% disabled, and could not lift greater than 15 pounds, or stand for more than two hours. The ALJ gave Dr. Gosy's opinion "great weight," on the grounds that Dr. Gosy was a "treating physician" with a "long-term treating relationship" with the claimant. (Dkt. #6 at 23).

This was error. Plaintiff saw Dr. Gosy only twice, and his March 14, 2016 assessment was rendered after the first, single examination, which was specific to plaintiff's left ankle. As such, Dr. Gosy was not a treating physician, and his opinion was not entitled to special weight. *See Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) ("ALJs should not rely heavily on the findings of consultative physicians after a single examination"); *Cabreja v. Colvin*, 2015 U.S. Dist. LEXIS 146480 at *104 (S.D.N.Y. 2015) ("the opinions of onetime examiners to not overrule those of a treating physician barring any serious errors in the treating physician's opinion").

In contrast, the ALJ rejected the opinion of plaintiff's treating orthopedist, Dr. David Pochatko, who treated plaintiff from at least April 2014 through December 2015. Dr. Pochatko opined repeatedly that due to Achilles tendinitis, plantar fasciitis and arthritis in her feet, plaintiff required a "modified sit-down job." (Dkt. #6 at 389-400). The ALJ gave Dr. Pochatko's opinion concerning plaintiff's need for a "sit-down job" only "some" weight, reasoning that Dr. Pochatko had not defined "modified," that Dr. Pochatko did not treat plaintiff after November 2015 (in fact, Dr. Pochatko's final treatment note is dated December 21, 2015, Dkt. #6 at 389), and that Dr. Gosy's March 14, 2016 opinion was entitled to greater weight than Dr. Pochatko's because it reflected plaintiff's condition "as the benefit of further treatment was realized." (Dkt. #6 at 21).

Initially, it is unclear how or why the ALJ believed that Dr. Gosy's March 14, 2016 opinion was more reflective of "the benefit of further treatment" of plaintiff's ankles and feet than Dr.

4

Pochatko's opinions, which were set forth repeatedly in treatment notes through December 21, 2015, just three months prior to plaintiff's March 14, 2016 visit with Dr. Gosy.

Regardless, because Dr. Pochatko's opinion manifestly described limitations beyond what the ALJ determined in his RFC finding, the ALJ's erroneous finding that Dr. Gosy was a treating physician, and his elevation of Dr. Gosy's opinion over Dr. Pochatko's as the more recent of two competing treating physician opinions, cannot be said to be harmless error.

Because the ALJ's RFC determination was based, in part, on an erroneous understanding of plaintiff's treating relationship with Dr. Gosy, a mistaken weighing of Dr. Gosy's opinion, an inappropriate comparison of Dr. Gosy's opinion with Dr. Pochatko's which assumed both physicians held the same treating physician status, and a failure to properly weigh Dr. Pochatko's opinion or provide good reasons for declining to grant it controlling weight, remand is appropriate.

**II.    Plaintiff's RFC**

Plaintiff also contends that the ALJ's RFC finding – and specifically, his conclusion that plaintiff can continuously stand for up to 2 hours at a stretch, up to six hours in a workday – is not supported by substantial evidence.

The Court agrees. When the ALJ found that plaintiff can perform light work and can stand for up to 2 hours at a time, he implicitly concluded that plaintiff could stand for a *total* of 6 hours in an 8-hour workday, as this ability is inherent in the performance of light work. There is no evidence of record concerning plaintiff's ability to stand beyond a single, 2-hour period, let alone evidence that she can stand for a cumulative total of 6 hours. Treating physician Dr. Pochatko opined that plaintiff could only perform a "modified sitdown" job. (Dkt. #6 at 389-400).[2]

---

[2] According to plaintiff's July 3, 2015 treatment note with Dr. Pochatko, she had attempted to return to her work as a cabinet assembler after a foot injury, but was unable to perform to the required production level without spending appreciable time on her feet, which caused her significant pain. When Dr. Pochatko gave her a physician's note requiring that she work exclusively at a "sitdown" (sedentary) job, she was instantly fired. (Dkt. #6 at 45, 399).

Examining physician Dr. Gosy opined that plaintiff could stand for up to 2 hours, but did not specify whether this could be repeated more than once in a workday. (Dkt. #6 at 476-77). Consulting physician Dr. Donna Miller opined that plaintiff had "mild" limitations for prolonged standing, but did not specify the nature or duration of those limitations. (Dkt. #6 at 351-55). Plaintiff testified that she can comfortably stand for no more than 10-15 minutes at a time. (Dkt. #6 at 52). X-rays from September 2016 and December 2016 noted degenerative changes in both of plaintiff's feet and her left hip. (Dkt. #6 at 20).

The plaintiff's severe impairments, as determined by the ALJ, include rheumatoid arthritis; left hip osteoarthritis with trochanteric pain syndrome (bursitis), osteophytes (bony growths) and labrum tear (torn cartilage); bilateral Achilles tendinitis and plantar fasciitis; bilateral mid-foot arthritis; and bilateral cavus feet (foot deformity involving a high arch and stiffness). (Dkt. #6 at 15). These severe impairments, affecting plaintiff's left hip and both feet, would logically be expected to result in greater than minimal limitations on plaintiff's ability to perform weight-bearing activities such as standing. Nonetheless, the ALJ's finding that plaintiff has the RFC to stand for up to 6 hours in an 8-hour workday (even if the standing time is divided into periods of 2 hours or less) is not corroborated by any objective medical findings or medical opinion of record, and appears to be wholly conjectural. Remand is therefore necessary, in order to generate a record that is sufficiently specific with respect to plaintiff's ability to engage in postural activities including standing. *See e.g.*, *Falk v. Colvin*, 2016 U.S. Dist. LEXIS 110677 at *19-*20 (S.D.N.Y. 2016) (where ALJ failed to explain the basis for his finding that plaintiff could sit up to six hours in a workday, remand is necessary: "[t]he ALJ is not permitted to speculate about [a claimant's] capacity to remain seated based on [medical reports using non-specific terms such as 'moderate'

6

and 'long periods of time']; rather, he had a duty to defer his decision until he procured medical evidence that specifically discussed [claimant's] capacity to remain seated for six hours").

Nor is the ALJ's error harmless, since an RFC determination limited to sedentary work would have compelled a finding of "disabled" by application of the Medical-Vocational Guidelines, given that plaintiff was an individual "closely approaching advanced age" at the time of her application. *See Medical Vocational Guidelines*, Part 404, Subpt. P, App. 2 at Rule 201.09.

This is not a case "[w]here the existing record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose." *Martinez v. Commissioner*, 262 F.Supp.2d 40, 49 (W.D.N.Y. 2003). *See also Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). Remand is required so that the Commissioner can apply the proper legal standards in weighing the evidence of record, and to obtain additional evidence and clarification, as appropriate, from plaintiff's treating physicians and/or other medical sources. *See Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999).

## CONCLUSION

For the forgoing reasons, I find that the ALJ's decision was not supported by substantial evidence, and was the product of factual and legal error. The plaintiff's motion for judgment on the pleadings (Dkt. #11) is granted, the Commissioner's cross motion for judgment on the pleadings (Dkt. #15) is denied, and this matter is remanded for further proceedings.

On remand, the ALJ should summarize the evidence of record, re-evaluate the medical opinions of record with a detailed application of the treating physician rule to Dr. Pochatko's opinion (but not Dr. Gosy's), and re-determine plaintiff's RFC for the relevant period, with particular focus on plaintiff's ability to stand and/or perform weight-bearing activities. To the extent that the ALJ finds that additional evidence and explanation is necessary to reach findings

7

that are based on substantial evidence, the ALJ is directed to recontact plaintiff's treating and examining physician(s) to request expanded and/or updated opinions, or to order consultative examinations as appropriate.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       March 25, 2020.